# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GREGORY WEST ENTSMINGER,

    Plaintiff

v.

ROMEO ARANAS, *et al.*,

    Defendants

Case No.: 3:16-cv-00555-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 278

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 278, 278-1 to 278-13, errata at 279, 279-1, 279-2.) Plaintiff filed a response. (ECF Nos. 307, 307-1 to 307-19.) Defendants did not file a reply brief.

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was incarcerated at Northern Nevada Correctional Center (NNCC). This action is proceeding on the Second Amended Complaint (SAC). (ECF No. 18.)

Defendants are Dr. Romeo Aranas, Dr. Michael Minev, Veronica Austin, Isidro Baca,

Dr. Robert Bannister, Barbara Cegavske, Andrew Clinger, Patrick Cates, James Cox, James

Dzurenda, Lois Elliot, Dave Everett, Sunshine Flores, Missy Gleason aka Sonja Eddings-Hill,

Linda Grachowski, Summer Hanson-Jacobsen, Daymon Haycock, William Hollman, Teri

Jacobs, John Keast, Adam Laxalt, Aaron Ford, Dr. Marsha Johns, Jennifer Link, Catherine

Cortez-Masto, Melanie McBroom, Ross Miller, Melissa Mitchell, Shannon Moyle, Monica

Navarro, John Peery, Dr. Mardelle Peterson, Dr. Wallace Remsen, Candis Rambur, Kathleen

Reynolds, Brian Sandoval, Steve Sisolak, Sandra Snider, Dr. Elizabeth Swope, Dr. John

Vanhorn, Lisa Walsh, Michelle White, and the Estate of Gene Hing Yup (for Dr. Gene Yup).

Plaintiff named John and Jane Doe Correctional Officers in Count 1; however, he never

identified the proper defendants. Therefore, the John and Jane Doe Correctional Officers should

be dismissed without prejudice.

In addition, the Attorney General's Office accepted service for defendant Sergeant Juliette

Roberson (ECF Nos. 114, 137); however, the portion of Count I alleged against her was

dismissed from this action without prejudice (ECF No. 21 at 20:8-9). Roberson should remain

dismissed from this action as Plaintiff never sought leave to amend to assert a viable claim

against Roberson.

The court screened the SAC and allowed Plaintiff to proceed with the following claims:

**Count I(a)**: an access to courts claim against the John/Jane Doe correctional officers who are

alleged to have prevented Plaintiff from filing a lawsuit.[1]

---

[1] Since the court has recommended dismissal of the John/Jane Doe correctional officers, Count I(a) should likewise be dismissed without prejudice.

**Count I(b)**: a First Amendment legal mail claim against Hollman, and the John and Jane Doe correctional officers who opened his legal mail.[2]

**Count II**: a retaliation claim against Dr. Vanhorn, Keast, Jacobs, Missy Gleason, Dr. Yup (through his estate), McBroom, Navarro, Walsh, Dr. Aranas, and Austin, based on allegations that Dr. Vanhorn, under Keast's and Jacob's orders, declined to treat Plaintiff's dental issues unless he withdrew his grievance, and Dr. Yup and the others refused to treat his dental issues because of his grievances.

**Count III**: an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Johns, Mitchell, Keast, Baca and Dr. Aranas, based on allegations that after he injured his wrists, these Defendants delayed scheduling necessary appointments to fix his wrists, delayed scheduling his ear infection appointments, and intentionally failed to respond to his pain needs after wrist/hip surgery.[3]

**Count IV**: an Eighth Amendment deliberate indifference to serious dental needs claim against Dr. Remsen, Keast, Elliot, Dr. Vanhorn, Missy Gleason, Peery, Grachowski, Dr. Aranas, Jacobs, Dr. Yup (through his estate), Dr. Peterson, Jennifer Link, Summer Hanson-Jacobsen, Dr. Swope, Snider, and Dr. Bannister, based on allegations of multi-year waits for emergency dental care and refusals to address Plaintiff's pain.[4]

**Count V**: a conspiracy claim against Sandoval, Miller, Cortez-Masto, Laxalt, Cegavske, Clinger, Dr. Aranas, Dr. Bannister, Jacobs, Keast, Sunshine Flores, Reynolds, Haycock, Cox and

---

[2] Again, to the extent Count I(b) is asserted against John/Jane Doe correctional officers, it should be dismissed without prejudice.

[3] This claim was also allowed to proceed against Nurse Kathy, but she has been dismissed without prejudice. (ECF No. 121.)

[4] This claim was also allowed to proceed against Ilene Sandborne, but she has been dismissed without prejudice. (ECF No. 121.)

Dzurenda, based on allegations that they have a policy to deny or delay dental care for inmates.[5]
Plaintiff was allowed to substitute in the following defendant public officials insofar as their
predecessors were sued in their official capacities: Dr. Michael Minev (for Dr. Romeo Aranas),
Patrick Cates (for Andrew Clinger), Aaron Ford (for Adam Laxalt), Steve Sisolak (for Brian
Sandoval), and Michelle White (for Mike Wilden). Dr. Aranas, Clinger, Laxalt, and Sandoval
remain as defendants in their individual capacities.

**Count VI**: an equal protection claim against Missy Gleason, Sunshine Flores, Jennifer Link,
Peery, Keast, Jacobs, Dr. Yup (through his estate), and Dave Everett, based on allegations that
they delayed medical and dental treatment for inmates convicted of sex offenses with no rational
basis.[6]

**Count VII(a)**: a due process claim of an authorized intentional deprivation of property against
Dr. Remsen, Keast, Dr. Aranas and Cox, based on allegations that Dr. Remsen took Plaintiff's
gold crown and bridge pursuant to a policy Plaintiff avers was created by Keast, Dr. Aranas and
Cox.

**Count VII(b)**: a due process claim against Missy Gleason, Dave Everett, Melissa Mitchell,
Candis Rambur, Jacobs, Keast, Sunshine Flores, Reynolds, Haycock, Cox and Dr. Aranas, based
on allegations that they have charged him for medical and dental visits that have been cancelled,
and he was not reimbursed.[7]

---

[5] This claim was also allowed to proceed against Wilden, but he has been dismissed without prejudice. (ECF No. 154.)

[6] This claim was also allowed to proceed against Ilene Sandborne, dental assistant Laura, and dental assistant Alisha (later identified as Alisha Fanyo), but they have all been dismissed. (ECF Nos. 121 (Sandborne, Laura/Lara), 296 (Alisha Fanyo).)

[7] This claim was also allowed to proceed against Ilene Sandborne and dental assistant Laura, but they have been dismissed. (ECF Nos. 121, 296.)

1  Count VIII, which asserted various state law statutory claims, was dismissed without

2  prejudice. (ECF Nos. 195, 202.)

3  Defendants move for summary judgment, arguing: (1) Counts II, IV, V, VI and VII are

4  barred by the statute of limitations; (2) Plaintiff failed to exhaust his administrative remedies as

5  to Counts I and III; (3) Defendants are entitled to qualified immunity; (4) Hollman did not

6  violate Plaintiff's First Amendment rights in Count I(b); (5) there is no evidence of retaliation to

7  support Count II; (6) Defendants were not deliberately indifferent to Plaintiff's medical or dental

8  needs; (7) there is no evidence to support Plaintiff's conspiracy claim; (8) there is no evidence to

9  demonstrate Plaintiff was discriminated against because of his status as a sex offender to support

10  his equal protection claim in Count VI; and (9) Plaintiff's Count VII is unsupported.

11  **II. LEGAL STANDARD**

12  The legal standard governing this motion is well settled: a party is entitled to summary

13  judgment when "the movant shows that there is no genuine issue as to any material fact and the

14  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

15  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

16  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

17  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

18  of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary

19  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

20  other hand, where reasonable minds could differ on the material facts at issue, summary

21  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

22  "The purpose of summary judgment is to avoid unnecessary trials when there is no

23  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin,* 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.,* 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

    In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

1    If the moving party satisfies its initial burden, the burden shifts to the opposing party to

2   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

3   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

4   dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

5   be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

6   *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

7   (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

8   by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

9   U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

10   pleadings and set forth specific facts by producing competent evidence that shows a genuine

11   dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

12                           **III. DISCUSSION**

13   **A. Rule 56(d)**

14    Plaintiff states that discovery is missing and asks the court to defer ruling on Defendants'

15   motion for summary judgment under Rule 56(d).

16    "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

17   present facts essential to justify its opposition, the court may: (1) defer considering the motion or

18   deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any

19   other appropriate order." Fed. R. Civ. P. 56(d).

20    "Rule 56(d) provides a 'device for litigants to avoid summary judgment when they have

21   not had sufficient time to develop affirmative evidence.'" *Stevens v. Corelogic, Inc.*, 899 F.3d

22   666, 678 (9th Cir. 2018) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000

23   (9th Cir. 2002)). "A party seeking additional discovery under Rule 56(d) must 'explain what

further discovery would reveal that is essential to justify [its] opposition to the motion[ ] for summary judgment.'" *Id.* (quoting *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980) (alterations original, quotations omitted). "In particular, '[t]he requesting party must show [that]: (1) it has set forth in affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.'" *Id.* (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)) (emphasis and alteration original).

Plaintiff does not meet his burden under Rule 56(d) by explaining what discovery he seeks, the specific facts he hopes to elicit from that discovery, and how they are essential to opposing the motion for summary judgment. Therefore, Plaintiff's request to defer ruling on Defendants' motion for summary judgment should be denied.

**B. Count I**

**1. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should

1  determine the facts [in a preliminary proceeding]." *Albino v. Baca,* 747 F.3d 1162, 1168, 1170-
2  71 (9th Cir. 2014) (citations omitted).

3       Once a defendant shows that the plaintiff did not exhaust available administrative
4  remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is
5  something in his particular case that made the existing and generally available administrative
6  remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d
7  767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate
8  plaintiff did not meet his burden when he failed to identify any actions prison staff took that
9  impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to
10  comply with the administrative remedies process)).

11       Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm
12  grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89
13  (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so
14  *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original)
15  (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a)
16  requires an inmate not only to pursue every available step of the prison grievance process but
17  also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654,
18  657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and
19  not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199,
20  218 (2007).

21       To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross*
22  *v. Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but
23

only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

While Plaintiff argues that Defendants only provide the version of NDOC's Administrative Regulation (AR) 740 effective November 20, 2018 (ECF No. 278-13), Plaintiff provides versions of AR 740 effective in 2010, 2014, 2015, as well as two versions in 2017. (ECF No. 307-10 at 38-110.) Each version of AR 740 requires an inmate at NDOC to proceed through three grievance levels to complete the grievance process: the informal, first and second levels.

**2. Analysis**

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to Count I(a), which alleges an access to courts claim against the John/Jane Doe Defendants. The court need not reach these arguments, as it has already recommended that this claim be dismissed due to Plaintiff's failure to ever identify these defendants.

Defendants also argue that Plaintiff failed to exhaust his administrative remedies as to Count I(b) against Hollman regarding his legal mail claim.

In Count I(b), Plaintiff alleges that Hollman opened legal mail clearly marked legal and confidential from the ACLU on September 18, 2015. He contends that the envelope was clearly cut open along the sealed edge and then taped shut, to conceal that the envelope had been opened.

Defendants contend that Plaintiff filed a grievance asserting a legal mail claim in grievance 20063082274, but it was initiated on May 1, 2019 and does not assert the allegations of Count I(b). (ECF No. 278-12 at 4.) Additionally, they point out that Plaintiff did not pursue this grievance beyond the first level.

Grievance 20063082274 states that on *April 12, 2019*, Plaintiff was given an envelope from the U.S. Department of Justice, which had already been opened by the mailroom and then was stapled shut. (ECF No. 278-12 at 4.) This does not suffice to grieve Plaintiff's claim that Hollman opened his legal mail in *September of 2015*.

Plaintiff provides several other grievances that address legal mail issues, but none of these address Plaintiff's claim about his legal mail being opened in September of 2015. Grievance 20063113976, was filed on *January 17, 2021*, and asserts that legal mail postmarked *December 30, 2020*, was improperly opened. (ECF No. 307-3 at 53-55.) This does not serve to grieve the opening of his legal mail in 2015.

Grievance 20063048263 was filed on *March 7, 2017*, and asserted, among other things, that his legal mail was being opened before it got to him. (ECF No. 307-2 at 37.) This grievance was filed well beyond the time limit for filing a grievance about conduct that occurred in *September of 2015*; therefore, it does not exhaust Plaintiff's administrative remedies with respect to Count I(b). Moreover, this grievance was rejected for containing more than one appropriate issue. (ECF No. 307-2 at 44, 54, 56.)

Defendants have provided evidence that Plaintiff did not exhaust his administrative remedies as to his claim against Hollman in Count I(b). Plaintiff has provided no evidence that he did in fact exhaust his administrative remedies for this claim. Nor has he demonstrated that administrative remedies were unavailable to him. His conclusory statement that NDOC's grievance process is frustrating and overly complicated is insufficient to show that administrative remedies were unavailable to him in attempting to grieve the allegations of Count I(b). Therefore, Defendants' motion should be granted as to Count I(b).

**C. Count II**

    **1. Statute of Limitations**

    Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore section 1983 actions brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

    "A statute of limitations begins to run on the date on which the plaintiff's claim 'accrues.'" *Pouncil*, 704 F.3d at 573 (citation omitted). "Federal law determines when a cause of action for a Section 1983 claim accrues and, hence, when the statute of limitations begins to run." *Id*. (citation omitted). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id*. at 574 (citation omitted). The discovery rule requires the plaintiff to be diligent in discovering the critical facts of the case. *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999).

    Federal courts apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law, to civil rights claims filed under section 1983. *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (citations omitted). "[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (citations omitted).

1    Defendants argue that Plaintiff's claims in Counts II, IV, V, VI and VII are barred by the

2    applicable two-year statute of limitations.[8]

3    Plaintiff mentions a three-year statute of limitations in Nevada for medical malpractice

4    claims; however, Plaintiff is not proceeding in this court with a medical malpractice claim, but

5    various claims under section 1983. For such claims, the two-year statute of limitations applies.

6    **a. Statute of Limitations Analysis**

7    Count II is a retaliation claim. The claim has several components:

8    (a) On February 7, 2013, Plaintiff was at a dental appointment with Dr. Vanhorn, who told

9    Plaintiff, based on orders from Keast and Jacobs, that he could not do anything for Plaintiff

10   unless he dropped his second grievance. When he left his appointment, Missy Gleason told him:

11   "see what you prisoners get when you file a grievance.";

12   (b) On July 15, 2016, two of his teeth were still in need of repair, but Dr. Yup told Plaintiff there

13   was nothing he could do in continued retaliation for filing a grievance;

14   (c) When he submitted his grievance about retaliation, McBroom, Moyle, Navarro and Walsh

15   misdirected his grievance to insulate the non-medical staff from liability; and

16   (d) Jacobs delayed his third dental grievance, and Dr. Aranas and Austin responded to the

17   grievance by telling Plaintiff to "kite for another appointment."

18   Defendants assert that grievance 20062968987 correlates with Count II, and Plaintiff

19   received the second level grievance response on August 26, 2014, and Plaintiff filed his

20

21

22   _____

23   [8] Defendants also argue that Count I(a) and Count I(b) (only insofar as it is asserted against the John/Jane Doe correctional officers) is barred by the statute of limitations, but the court has recommended dismissal of Count I(a), and that portion of Count I(b) asserted against the John/Jane Doe correctional officers, because Plaintiff never identified the proper defendants.

1   complaint on September 23, 2016, and therefore, Count II is barred by the statute of limitations.

2   (ECF Nos. 287-1, 287-2.)

3        Plaintiff initiated informal level grievance 20062968987 on October 21, 2013. He

4   asserted that he was being denied dental treatment because he filed a grievance. He specifically

5   referenced the dental appointment with Dr. Vanhorn set up by Keast on February 7, 2013, and

6   that Dr. Vanhorn told Plaintiff he was told (by Keast) not to provide Plaintiff with any treatment

7   unless he dropped his grievance. (ECF No. 287-1 at 2-6.)

8        Plaintiff submitted his second level grievance for grievance 20062968987 on

9   July 20, 2014. (ECF No. 278-2 at 2-9.) Defendants state the grievance was completed on August

10  26, 2014, but this appears to be the "transaction date" on the inmate grievance report which

11  details Dr. Aranas' response to the second level grievance. (ECF No. 278-3.) The second level

12  grievance itself is signed as being denied on August 27, 2014, and Plaintiff did not sign the

13  second level grievance until September 25, 2014. Defendants submit no evidence indicating that

14  Plaintiff received the second level response before September 25, 2014, when he signed it.

15  Therefore, Plaintiff's complaint, asserting the retaliation claim based on the refusal to provide

16  treatment at the February 7, 2013 appointment, was timely filed on September 23, 2016, within

17  two years of the date he received the second level grievance response. In other words, the statute

18  of limitations should run from the date the inmate receives or otherwise is given notice of the

19  second level grievance response. If the second level grievance response is issued, but the inmate

20  does not receive it until months later, the inmate would not know that the grievance process was

21  complete during that time period. In sum, Defendants' motion should be denied insofar as his

22  allegations about the February 7, 2013 appointment are concerned.

23

14

Defendants' statute of limitations argument does not address Plaintiff's allegation in Count II that regarding Dr. Yup retaliating against him on July 15, 2016, or his allegations about McBroom, Moyle, Navarro, Walsh, Jacobs, Dr. Aranas, and Austin misdirecting or delaying his grievances. Therefore, Defendants have not demonstrated they are entitled to summary judgment on the basis that these aspects of Plaintiff's retaliation claim are barred by the statute of limitations.

In sum, Defendants' motion should be denied insofar as they seek summary judgment as to Count II on the basis that it is barred by the statute of limitations.

### 2. Other Arguments for Summary Judgment as to Count II

Defendants argue that Plaintiff can present no evidence that any of these Defendants retaliated against him for filing grievances.

A party moving for summary judgment must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be genuinely disputed "must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations …, admissions, interrogatory answers, or other materials." Alternatively, the moving party can show that the adverse party "cannot produce admissible evidence to support the fact."

Defendants do not cite any undisputed facts with respect to Plaintiff's retaliation claim. Nor do they cite to any particular evidence that supports undisputed facts. Moreover, Defendants merely conclude that Plaintiff cannot present evidence to support his retaliation claim without explaining why this is the case, or citing to any evidence.

Defendants have not met their burden of establishing they are further entitled to summary judgment as to Count II, and their motion for summary judgment should be denied as to Count II on this basis.

**D. Count III**

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to Count III.

According to Defendants, Plaintiff filed grievance 20063058172, which was initiated on December 8, 2017, but the allegations at issue in that grievance post-date the violations alleged here. (ECF No. 278-4 at 3.)

Grievance 20063058172 appears to have been initiated in November of 2017, (ECF No. 278-4 at 3.) Grievance 20063058172 does not address the issues raised by Plaintiff in Count III: that in 2014, he was only allowed to have pain medication twice a day because of Baca's rule that pill call could only occur twice a day; that Mitchell delayed his getting his x-rays in 2014, and waited too long for him to see the orthopedist to have the bone set; that Mitchell delayed his follow up appointment with the ENT, and ignored recommended medication orders, and failed to tell him about the order for a hearing aid; after his surgery in January of 2015, he was only given narcotic pain medication for two days, even though the surgeon had prescribed narcotic pain medication for longer; and orders for a double mattress in February of 2015 were ignored.

Instead, Plaintiff's own evidence reveals that this grievance related to an incident where Plaintiff fell in *2017* and broke his left hand. (*See* ECF No. 307-2 at 66.)

Plaintiff submits several other grievances that he contends establish he exhausted administrative remedies, but none of these grievances raise the issues asserted in Count III. (*See*

ECF Nos. 307-1 at 2-11, 72-75; ECF No. 307-2 at 2-6, 26-43, 62-63, 84-96; ECF No. 307-3 at 2-4, 19-21, 53-55.)

In sum, Defendants have provided evidence that Plaintiff failed to exhaust administrative remedies with respect to Count III. Plaintiff has not provided evidence in response that he did in fact exhaust his administrative remedies as to Count III. Nor has Plaintiff demonstrated that administrative remedies were unavailable to him.

In sum, Defendants' motion should be granted as to Count III.

**E. Count IV**

**1. Statute of Limitations**

In Count IV, Plaintiff details his major dental problems at NNCC from 2008 through August of 2016, including his grievances, multi-year waits to receive care, six-month long tooth pain, and inadequate pain medication.

Defendants argue that Count IV is barred by the statute of limitations. They argue that this is demonstrated by grievances 200628999392 and 20062955272, which they claim correlate with Count IV.

Plaintiff initiated grievance 200628999392 on June 1, 2010, asserting he had been repeatedly subjected to inadequate dental care. (ECF No. 278-8 at 2-12.) Plaintiff signed the second level grievance on September 27, 2010. (ECF No. 278-8 at 13.)

Plaintiff's Eighth Amendment claim for inadequate dental care in Count IV is barred by the statute of limitations with respect to that treatment which he alleged to be inadequate as of the filing of grievance 200628999392, on June 1, 2010, as he did not file his complaint until September 23, 2016, well beyond two years after he signed for the second level grievance on September 27, 2010.

1    Plaintiff initiated grievance 20062955272 on January 4, 2013, about his inadequate dental

2  care. (ECF No. 278-5 at 2-5.) Plaintiff signed the second level grievance on October 11, 2013.

3  (ECF No. 278-6 at 2.)

4    Plaintiff's Eighth Amendment claim for inadequate dental care in Count IV is also barred

5  by the statute of limitations with respect to that treatment which he alleged to be inadequate as of

6  the filing of grievance 20062955272, on January 4, 2013, as he did not file a complaint for the

7  conduct giving rise to the denial of dental care during that time period until September 23, 2016.

8  That was well beyond two years after he received the second level grievance on October 11,

9  2013.

10    Plaintiff's SAC alleges, however, that he continued to receive inadequate dental care

11  through 2016, and Defendants have not identified a grievance or otherwise argued that his claim

12  for inadequate dental care post-January 4, 2013, is barred by the statute of limitations.

13    According to the SAC, the Defendants involved in the inadequate dental care through

14  January of 2013 were Dr. Remsen, Sandy Snider, John Peery, Keast, Dr. Bannister, Dr. Swope,

15  Missy Gleason, Linda Grachowski, and Lois Elliott. Summary judgment should be granted in

16  favor of these defendants. Dr. Vanhorn is also alleged to have provided inadequate care during

17  this time period, but Plaintiff also alleges he provided inadequate care in 2014. The Defendants

18  Plaintiff alleges provided him care post January 4, 2013 are Dr. Vanhorn, Dr. Yup, Dr. Peterson,

19  Jennifer Link, Summer Hanson-Jacobsen and Dr. Aranas. The court will now address the

20  viability of Count IV against these remaining defendants.

21

22

23

**2. Other Grounds for Summary Judgment as to Count IV**

     **a. Dr. Vanhorn**

The only remaining allegation with respect to Dr. Vanhorn that post-dates

January 4, 2013, is that Plaintiff saw Dr. Vanhorn on February 7, 2014, and Dr. Vanhorn said he

could fix tooth 28 by replacing the old amalgam filling (which was leaking) with a fluoride

filling. (ECF No. 18 at 37 ¶ 26.) This does not allege that Dr. Vanhorn knew of and disregarded a

risk to Plaintiff's health. Instead, it demonstrates that Dr. Vanhorn offered Plaintiff treatment for

tooth 28. Therefore, Dr. Vanhorn should be dismissed from Count IV, insofar as Plaintiff's post-

2013 allegations are concerned. Plaintiff has already amended his complaint multiple times;

therefore, the dismissal should be with prejudice.

     **b. Dr. Peterson**

Plaintiff alleges that he saw Dr. Peterson on October 1, 2015, and she agreed to repair

tooth 11 rather than pull it. He avers: "The work was not done up to standards and it needs to be

re-done but I give her credit for trying. I was promised a follow-up but never got it. The tooth is

still viable. Dr. Yup has now put tooth #11 on the watch list." (ECF No. 18 at 37

¶ 29.) Plaintiff later stated that in August of 2016, he had hoped to see Dr. Peterson, who would

actually try to do restorative work. (*Id.* ¶ 30.)

On further review of these allegations, the court finds that Plaintiff does not allege that

Dr. Peterson was deliberately indifferent to his dental needs. At most, he asserts she may have

been negligent in trying to restore tooth 11 when he says "the work was not done up to

standards." He does not claim she was responsible for denying or delaying his dental care, or that

she knew of and disregarded a risk to his dental health in treating tooth 11. Therefore,

1  Dr. Peterson should be dismissed, and the dismissal should be with prejudice given that Plaintiff

2  has already amended his complaint multiple times.

3                    **c. Jennifer Link and Summer Hanson-Jacobsen**

4          Plaintiff's allegations with respect to dental assistants Jennifer and Summer are that they

5  were present during his appointment with Dr. Yup on August 17, 2016, and that he asked an

6  assistant whether the administration was allowing fillings and the unidentified dental assistant

7  responded "no." (ECF No. 18 at 37 ¶¶ 31, 34.) Plaintiff also alleges that dental assistant Jennifer

8  told the doctor to charge *another prisoner* who was presented with extraction as the only option,

9  but this does not demonstrate deliberate indifference to Plaintiff's dental needs. (ECF No. 18 at

10 37-38 ¶ 34.) These allegations do not demonstrate deliberate indifference on the part of Jennifer

11 Link or Summer Hanson-Jacobsen as to Plaintiff's dental needs. As with Dr. Vanhorn and

12 Dr. Peterson, Jennifer Link and Summer Hanson-Jacobsen should be dismissed with prejudice.

13                    **d. Dr. Aranas**

14         Plaintiff's allegations in Count IV against Dr. Aranas are that he was a new medical

15 director who allowed the policies and practices that denied effective treatment to continue, and

16 that he kept the doctor/patient ratio below constitutional levels. In addition, Plaintiff avers that

17 Dr. Aranas denied Plaintiff's requests by agreeing with a first level response from Teri Jacobs.

18 (ECF No. 18 at 36 ¶ 19.)

19          Plaintiff initiated grievance 20062955272 on January 4, 2013, complaining that his

20 dental needs had not been timely treated. At the informal level, he stated that he needed a root

21 canal on one tooth immediately, for which he was experiencing pain. In addition, he said that

22 tooth 2 continued to be painful, infected and bleeding for over three years, most likely due to an

23 abscess. He reported that Dr. Vanhorn told him he did not have time to repair it, and to put

toothpaste on it. Plaintiff asked for an exam and cleaning, and was told he would only get one exam ever, and that they do not do cleanings. (ECF No. 307-1 at 72-74.) Keast responded at the informal level, advising Plaintiff that his claims did not match his dental department records, which showed he kited for dental services on December 5, 2012, and was seen that day. The dentist recommended a course of treatment, but Plaintiff did not agree, and so a course of antibiotics was provided. Plaintiff was told to contact dental if things did not improve, but there was no evidence he kited dental since his visit in December. Plaintiff was scheduled for a follow up on January 7, 2013, as a courtesy, noting that future appointments would be scheduled via kite. (ECF No. 307-1 at 77.)

Plaintiff filed a first level grievance, about the denial and delay of dental treatment. He said that he waited for two years to be seen for tooth 19, and another eight months suffering with a fractured and abscessed tooth that was not adequately treated. Tooth 7 was to be pulled after Plaintiff was on the waiting list for two years, but Plaintiff refused and Dr. Swope saved the tooth. Then, when she was preparing to repair tooth 2, she found out the materials she were needed were not available, and the procedure was not performed. Dr. Vanhorn also told Plaintiff to put toothpaste on tooth 2 because he did not have adequate time to perform the procedure. In addition, he told Plaintiff that tooth 28 was a perfect candidate for a root canal, but he was not allowed to perform root canals pursuant to NDOC procedures. Dr. Vanhorn was also later told not to do anything for tooth 28 due to filing this grievance. (ECF No. 307-1 at 78-82.)

Jacobs responded to the first level grievance, stating that Plaintiff's last dental kite was on August 4, 2011; he was seen by dental on December 5, 2012; then on February 7, 2013, Plaintiff was seen by dental, an exam was performed and care was discussed, including the need for a

1   temporary crown. Plaintiff was told that if any further dental issue has become a problem, he

2   should write a kite so his care could be addressed. (ECF No. 307-1 at 83.)

3         Plaintiff filed a second level grievance, stating that he had filed over 35 kites, and

4   asserted he had filed a kite on March 20, 2013, and waited over a year before being placed on a

5   waiting list. He also referenced kites from 2012 and 2013. He reiterated that when he finally saw

6   Dr. Vanhorn, he was told he had too many inmates to see to fix his teeth. He further claimed that

7   he had pain in three teeth, but Dr. Vanhorn said he was told not to perform treatment because

8   Plaintiff filed a grievance. (ECF No. 307-1 at 84-92.)

9         Dr. Aranas responded to the second level grievance, stating: "Agree with first level

10  response." (ECF No. 307-1 at 97.)

11        Taking the facts in the light most favorable to Plaintiff, a fact-finder could determine that

12  when presented with the statements in this grievance, Dr. Aranas was deliberately indifferent to

13  Plaintiff's serious dental needs when he simply upheld Jacob's response to the first level

14  grievance. On the other hand, a fact finder could agree that Dr. Aranas was justified in upholding

15  Jacob's response given her statements that Plaintiff had not filed a kite to dental since 2011, and

16  saw dental in 2012 and 2013. Plaintiff grievance, though, further demonstrates a dispute with

17  Jacob's version of events regarding whether and how many kits he had filed about dental issues.

18  Therefore, summary judgment should be denied as to Dr. Aranas in Count IV.

19                    **e. Dr. Yup (through his estate)**

20        Plaintiff alleges that Dr. Yup told Plaintiff that the only thing he could do was to pull

21  Plaintiff's teeth. He last saw Dr. Yup on August 17, 2016, after a nine month wait while Plaintiff

22  had serious pain. Plaintiff claims Dr. Yup did not even look at Plaintiff's teeth, but only the films,

23  and declared that he had to pull three teeth, and that Plaintiff could not get dental prosthetics.

Plaintiff notes that he has TMJ issues from only being able to chew on his right side, and missing and damaged teeth on that side. Dr. Yup also noted decay on teeth 2, 4, 6 (deep decay), and that tooth 28 needed to be extracted. Plaintiff alleges that Dr. Yup told him that they could not do fillings. Plaintiff explained to Dr. Yup that he had to use a splintered popsicle stick to clean out his cavities because it was painful when food got into them, and Dr. Yup told Plaintiff he knew what he meant.

Defendants rely only on Plaintiff's allegations in the SAC, and do not point to any *evidence* to demonstrate there is no genuine dispute of material fact regarding whether there was deliberate indifference to his dental care. If Plaintiff's allegations are believed, a trier of fact could conclude that there was deliberate indifference. Therefore, summary judgment should be denied as to Dr. Yup in Count IV.

**4. Conclusion on Count IV**

Summary judgment should be granted as to Defendants Dr. Remsen, Sandy Snider, John Peery, Keast, Dr. Bannister, Dr. Swope, Missy Gleason, Grachowski, and Elliot because Plaintiff's claims against them are barred by the statute of limitations. Summary judgment should also be granted in favor of Dr. Vanhorn insofar as Plaintiff's claims against him are predicated on conduct through January 4, 2013, because such claims are barred by the statute of limitations.

Plaintiff's remaining allegations in Count IV, fail to state a claim for deliberate indifference to serious dental needs against Dr. Vanhorn, Dr. Peterson, Jennifer Link or Summer Hanson-Jacobsen. Plaintiff's claim in Count IV against these defendants should be dismissed, and because Plaintiff is already on his SAC and the scheduling order deadline to amend a pleading has long since passed, the dismissal should be with prejudice.

1    Defendants' motion for summary judgment should be denied as Dr. Aranas and Dr. Yup

2 (through his estate) as to Count IV.

3 **F. Count V**

4    Defendants argue that Plaintiff does not allege facts showing how each Defendant

5 personally participated in the alleged constitutional violation and he does not link each defendant

6 to the harm alleged.

7    On further review of the allegations of Count V, the court agrees with Defendants that

8 Plaintiff fails to state a claim upon which relief may be granted. Plaintiff names the members of

9 the Board of State Prison Commissioners (and their successors), as well as those who have a role

10 in disbursing and directing financial resources (and their successors). Plaintiff vaguely references

11 settlement payouts and a report from the ACLU. He also briefly discusses the prison population

12 and doctor to patient ratio, budget cuts, and abuse of the NDOC payroll system. Finally, he states

13 that former NDOC Director Dzurenda made statements that acknowledge overcrowding,

14 retaliation and the lack of medical and dental care at NDOC, without describing the statements

15 themselves. (ECF No. 18 at 44-45.)

16    A plaintiff asserting a conspiracy claim under section 1983 must allege *specific facts* to

17 show the existence of the claimed conspiracy. *Karim-Panahi v. Los Angeles Police Dept.*, 839

18 F.2d 621, 626 (9th Cir. 1988). The elements of such a claim are: (1) an agreement or meeting of

19 the minds to violate constitutional rights; (2) and an actual deprivation of those rights resulting

20 from the alleged conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). "To be liable …

21 each participant must at least share the common objective of the conspiracy." *Id*. at 441 (internal

22 quotation marks and citation omitted).

23

1      Plaintiff does not allege any facts demonstrating an agreement or meeting of the minds.

2 Conclusory allegations that there was a conspiracy are insufficient. *See Karim-Panahi v. Los*

3 *Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) (citations omitted) ("A mere allegation

4 of conspiracy without factual specificity is insufficient.").

5      Moreover, "42 U.S.C. § 1983 creates a cause of action against a person who, acting under

6 color of state law, deprives another of rights guaranteed under the Constitution." *Jones v.*

7 *Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state

8 law to be liable under section 1983 there must be a showing of personal participation in the

9 alleged rights deprivation[.]" *Id*. (citations omitted).Plaintiff does not describe what each of these

10 Defendants did personally to violate his rights.

11      Therefore, Count V should be dismissed, and the dismissal should be with prejudice as

12 Plaintiff has had ample opportunity to amend to state a conspiracy claim. As a result, the court

13 need not reach Defendants' argument that Count V is barred by the statute of limitations.

14 **G. Count VI**

15      In Count VI, Plaintiff alleges that sex offenders are denied the same treatment for

16 medical and dental care as other inmates in violation of the Equal Protection Clause.

17      **1. Statute of Limitations**

18      Defendants argue that Count VI is barred by the statute of limitations, and this is

19 demonstrated by grievances 20062955272 and 20062899392, which they claim correlate with

20 Count VI. These grievances do not address discrimination by being given inadequate treatment

21 due to his status as a sex offender. Therefore, these grievances do not demonstrate that Plaintiff's

22 claim in Count VI is barred by the statute of limitations, and Defendants' motion should be

23 denied insofar as they argue Count VI is barred by the statute of limitations.

**2. Other Grounds for Summary Judgment**

Defendants argue Plaintiff cannot present evidence to show that any Defendant ever discriminated against him due to his status as a sex offender, or that they acted intentionally to treat him differently because he is a sex offender.

Again, Defendants do not point to any evidence to show that there is no genuine dispute of fact and they are entitled to summary judgment as a matter of law. Alternatively, they merely conclude that Plaintiff cannot support this claim without explaining why this is the case or pointing to any support for their own argument. As such, their motion for summary judgment as to Count VI should be denied on this additional basis.

**H. Count VII**

First, Plaintiff alleges that in 2009, he had a loose gold crown and bridge in his mouth, which Dr. Remsen took from him that year when gold was at a premium price. Dr. Remsen refused to give it back, stating that prison policy did not permit prisoners to possess rare metals. Then, on August 25, 2014, Dr. Yup attempted to cut off a gold dental fixture in Plaintiff's mouth, but Plaintiff refused to let him remove it. Plaintiff claims that Keast, Dr. Aranas and Cox were responsible for this policy about possessing gold. The court has referred to these allegations as Count VII(a).

Second, Plaintiff alleges that he was charged for medical and dental visits that prison officials have cancelled on him and he has not been reimbursed. The court has referred to this as Count VII(b).

1   **1. Statute of Limitations**

2       **a. Count VII(a)**

3       Defendants argue that grievance 200628999392 correlates with Count VII. That

4   grievance does state that on November 19, 2009, he had a gold cantilever taken out by

5   Dr. Remsen, which was in the dental office, and Plaintiff requested that it be secured with his

6   property. (ECF No. 278-8 at 8, 11.) Plaintiff signed for the second level grievance on September

7   27, 2010. Plaintiff's complaint was filed on September 23, 2016, well beyond the two year statute

8   of limitations. Therefore, Defendants' motion should be granted as to this aspect of Count VII.

9       Grievance 200628999392 could not correlate with Plaintiff's allegation about Dr. Yup

10  attempting to cut off a gold dental fixture; however, Plaintiff in the SAC, Plaintiff alleges that he

11  refused to let Dr. Yup remove this fixture; therefore, it does not appear that he states a due

12  process claim with respect to this allegation in any event. Plaintiff's due process claim in Count

13  VII(a) against Dr. Yup (through his estate) should be dismissed, and the dismissal should be with

14  prejudice as Plaintiff has had ample opportunity to amend to state a due process claim against

15  Dr. Yup.

16      **b. Count VII(b)**

17      Count VII(b) alleges that he was charged co-pays for appointments that were cancelled

18  many times, but was only successful in getting one charge reversed. (ECF No. 18 at 48.) In

19  grievance 20062899392, Plaintiff asserted that he had an appointment on December 8, 2009, that

20  was cancelled, and he put in for a reversal of charges on April 9, 2010. (ECF No. 278-8 at 6.) To

21  the extent Plaintiff's claim is premised on his allegation that he was charged and not reimbursed

22  for a visit on December 8, 2009, that he raised in grievance 20062899392, that claim is barred by

23  the statute of limitations.

1   Count VII does not recite the dates of the other co-pays he claims he was not able to get

2   reversed, and so the court cannot discern whether claims for those charges are barred by the

3   statute of limitations.

4   **2. Other Grounds for Summary Judgment re Count VII(b)**

5   Defendants assert that there are no other specific allegations in Count VII that any

6   Defendant wrongfully withdrew money from Plaintiff's trust account, or acted with

7   incompetence or knowing violation of his rights. Plaintiff does not identify the dates this

8   occurred, the amount of the alleged charges, or the names of an individual defendant who was a

9   participant in each charge.

10   In response, Plaintiff states that his Exhibit 12 shows that there are copays that were not

11   refunded when his appointment was cancelled on two occasions.

12   "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of

13   state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297

14   F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable

15   under section 1983 there must be a showing of personal participation in the alleged rights

16   deprivation[.]" *Id*. (citations omitted).

17   Defendants are correct that Plaintiff does not allege what each Defendant named in Count

18   VII(b) did to purportedly deny Plaintiff his due process rights. Moreover, Plaintiff does not

19   specify what dates he was charged for appointments that was cancelled, how much the charge

20   was, when he submitted a request for reimbursement, what the response was, or who the

21   defendant was that provided the response. Moreover, Exhibit 12, which Plaintiff says shows the

22   two occasions he was charged for appointments that were cancelled, consists of hundreds of

23   pages. (ECF No. 307-4, 307-5, 307-6, 307-7, 307-8, 307-9.) Plaintiff does not identify the pages

of the exhibits to which he refers, or tell the court the dates on which he had appointments

cancelled and then was not refunded the co-pay, or which Defendant was involved with the

transaction and request for a refund, and was responsible for not issuing a refund.

In this instance, Defendants have demonstrated that Plaintiff cannot produce evidence to

support the remainder of his allegations in Count VII(b). In response, Plaintiff has not pointed to

evidence to support his claim. As such, summary judgment should be granted in Defendants'

favor as to Count VII(b).

**I. Qualified Immunity**

The court need only address Defendants' argument for qualified immunity as to the

remainder of Count IV (proceeding against Drs. Aranas and Dr. Yup, through his estate) and

Count VI. Defendants do not argue qualified immunity with respect to Count II.

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light

most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the

right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*,

833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017) ; *see*

*also Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019).

Defendants argue they are entitled to qualified immunity on Count IV because Plaintiff

cannot prove any Defendant acted incompetently or knowingly violated his rights. The court has

already determined that if Plaintiff's factual allegations are believed, a fact-finder could conclude

that these Defendants were deliberately indifferent to Plaintiff's serious dental needs. Moreover,

it was clearly established that denying or delaying dental care (where the delay leads to further

injury) can violate the Eighth Amendment. *See Hunt v. Dental Dept.*, 865 F.2d 198,  200 (9th

Cir. 1989) (citation omitted) ([T]he Eighth Amendment requires that prisoners be provided with

a system of ready access to adequate dental care."). Moreover, Defendants' conclusory argument that Plaintiff cannot prove any Defendant was incompetent or knowingly violated his rights is insufficient to meet their burden of demonstrating they are entitled to qualified immunity.

Defendants similarly argue that they are entitled to qualified immunity on Count VI because Plaintiff cannot prove any Defendant acted incompetently or knowingly violated his rights. Again, this conclusory statement is insufficient to establish Defendants are entitled to qualified immunity. Moreover, it was clearly established that there is a constitutional right to pursue grievances. *See Entler v. Gregoire*, 872 F.3d 1031, 1041-42 (9th Cir. 2017) (citations omitted).

In sum, Defendants have not demonstrated they are entitled to qualified immunity with respect to the claims the court has recommended should proceed.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DENYING** Plaintiff's request to defer ruling on Defendants' motion for summary judgment under Rule 56(d);

(2) Finding that Juliette Roberson should remain **DISMISSED** from this action;

(3) As to Count I:

(a) **DISMISSING** Count I(a) **WITHOUT PREJUDICE** (as it is only asserted against the John and Jane Doe correctional officers);

(b) **DISMISSING** that portion of Count I(b) asserted against the John and Jane Doe correctional officers **WITHOUT PREJUDICE**;

(c) **GRANTING** Defendants' motion for summary judgment as to the claim against Hollman in Count I(b) because Plaintiff did not exhaust his administrative remedies;

(4) **DENYING** the motion for summary judgment as to Count II;

(5) **GRANTING** the motion for summary judgment as to Count III because Plaintiff did not exhaust his administrative remedies;

(6) As to Count IV:

    (a) **GRANTING** summary judgment as to Defendants Dr. Remsen, Sandy Snider, John Peery, Keast, Dr. Bannister, Dr. Swope, Missy Gleason, Linda Grachowski, and Lois Elliot, because the claims against them are barred by the statute of limitations;

    (b) **GRANTING** summary judgment as to Dr. Vanhorn insofar as the pre-2013 allegations are concerned because his claim during that time period is barred by the statute of limitations, and **DISMISSING** Dr. Vanhorn **WITH PREJUDICE** with respect to the post-2013 allegations in Count IV as he fails to state a claim upon which relief may be granted;

    (c) **DISMISSING WITH PREJUDICE** Dr. Peterson, Jennifer Link and Summer Hanson-Jacobsen as Plaintiff fails to state a claim upon which relief may be granted; and

    (d) **DENYING** the motion for summary judgment regarding Count IV as to Dr. Aranas and Dr. Yup (through his estate);

(7) **DISMISSING WITH PREJUDICE** Count V;

(8) **DENYING** the motion for summary judgment as to Count VI;

(9) As to Count VII:

    (a) **GRANTING** the motion for summary judgment on statute of limitation grounds as to the claim in Count VII(a) against Dr. Remsen, Keast, Dr. Aranas and Cox, and **DISMISSING WITH PREJUDICE** the due process claim against Dr. Yup (through his estate) in Count VII(a);

    (b) **GRANTING** the motion for summary judgment as to Count VII(b).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 22, 2021

William G. Cobb
United States Magistrate Judge