UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GREGORY WEST ENTSMINGER,

Plaintiff,

v.

ROMEO ARANAS, *et al.*,

Defendants.

Case No. 3:16-cv-00555-MMD-WGC

ORDER

I.    **SUMMARY**

*Pro se* Plaintiff Gregory West Entsminger brings this action under 42 U.S.C. § 1983. Before the Court is a Report and Recommendation ("R&R") of United States Magistrate Judge William G. Cobb (ECF No. 311), recommending the Court grant in part and deny in part Defendants' motion for summary judgment (ECF No. 278 ("Motion")), deny Entsminger's request to defer ruling on Defendants' Motion under Fed. R. Civ. P. 56(d), and find that Defendant Juliette Roberson (Robison)[1] should remain dismissed from this action. Entsminger filed an objection to the R&R. (ECF No. 314 ("Objection").) As further explained below, the Court will adopt in part and reject in part the R&R and overrule in part Entsminger's Objection. First, Defendant Roberson was previously dismissed from this action (ECF No. 21 at 20) and should remain dismissed. Second, the Court will not defer ruling on the Motion because Entsminger has not met his burden under Rule 56(d). Third, the Doe Defendants should be dismissed without prejudice because Entsminger failed to identify them by the discovery deadline. Fourth, the Court will grant Defendants' Motion as to Entsminger's legal mail violations claim against Hollman and his Eighth Amendment claim for his fractured wrist because Entsminger has

---

[1]The order will refer to her as Roberson.

not exhausted his administrative remedies or shown that the remedies were unavailable to him. Fifth, the Court will grant Defendants' Motion as to Entsminger's conspiracy claim because he failed to show that there was a meeting of the minds or agreement by Defendants to violate his constitutional rights. Finally, the Court will deny Defendants' Motion as to Entsminger's Eighth Amendment deliberate indifference claim against VanHorn because the claims are not barred by the applicable statute of limitations, there is still a genuine dispute of material fact as to whether VanHorn was deliberately indifferent, and VanHorn is not entitled to qualified immunity.

## II.   BACKGROUND

The Court incorporates by reference and adopts the background Judge Cobb provided in the R&R and does not restate that background here. (ECF No. 311 at 1-5.)

## III.   LEGAL STANDARD

### A.  Review of Magistrate Judge's Recommendations

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party fails to object to a magistrate judge's recommendation, the Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). The Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Committee Notes (1983). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The Court's review is thus de novo because Entsminger filed his Objection. (ECF No. 314.)

### B.  Summary Judgment Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate

when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id*. at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

///

## IV.    DISCUSSION

The Court first addresses the parts of Entsminger's Objection that it overrules, including the dismissal of Defendant Roberson, the deferral of ruling on the Motion under Rule 56(d), the dismissal of the Doe Defendants (Count I(a) and I(b)), his legal mail violations claim against Defendant Hollman (Count I(b)), his Eighth Amendment deliberate indifference claim for his fractured wrists (Count III), and his conspiracy claim (Count V). The Court then addresses the part of Entsminger's Objection that it sustains, which is his Eighth Amendment deliberate indifference claim against Defendant VanHorn (Count IV). As to the remaining portions of the R&R that Entsminger did not object to, the Court will adopt Judge Cobb's recommendations.

### A.    Dismissal of Defendant Juliette Roberson

To start, Entsminger objects to Judge Cobb's recommendation that Defendant Roberson should remain dismissed from this action. (ECF Nos. 311 at 20, 314 at 12.) In the R&R, Judge Cobb noted *sua sponte* that the Attorney General's ("AG") Office accepted service for Roberson, but she was already dismissed without prejudice from the action in the second screening order. (ECF No. 311 at 2.) Entsminger objected to Judge Cobb's recommendation because there was a footnote in the screening order to add Roberson as a Defendant in this action. (ECF No. 314 at 12.)

Entsminger correctly notes that Roberson was added as a Defendant in the screening order. (*Id.*) However, Roberson was added for administrative purposes and should have been immediately terminated thereafter because she was dismissed without prejudice from this action by the Court in the very same order. (ECF No. 21 at 20.) Instead, she was erroneously served. (ECF No. 114.) To the extent the Court was not clear before, Roberson should remain dismissed from this action. The Court therefore adopts Judge Cobb's recommendation and overrules Entsminger's Objection as to this issue.

///

///

4

**B.     Discovery Under Rule 56(d)**

Entsminger objects to Judge Cobb's recommendation that the Court should not defer ruling on Defendants' Motion under Rule 56(d) because Entsminger did not meet his burden under the rule.[2] (ECF Nos. 311 at 7-8, 30, 314 at 13.) Entsminger argues that deferral is proper because discovery is missing, Defendants have withheld evidence, and they have used this lack of evidence against him in their Motion. (ECF Nos. 307 at 10, 314 at 13.).

Entsminger has failed to satisfy his burden under Rule 56(d). Specifically, Entsminger fails to specify what the allegedly missing records may reveal and how those particular facts would help him in his opposition to Defendants' Motion. *See Stevens v. Corelogic*, 899 F.3d 666, 678 (9th Cir. 2018) (providing that the party requesting further discovery under Rule 56(d) must explain what the additional discovery would reveal that is essential to justify its opposition to the motion for summary judgment and that the evidence the party seeks must be "more than 'the object of pure speculation.'") (citations omitted). Therefore, the Court adopts Judge Cobb's recommendation and overrules Entsminger's 56(d) objection.

**C.     Dismissal of Doe Defendants**

Entsminger next objects to Judge Cobb's recommendation that the Court dismiss the Doe Defendants in his denial of access to the courts claim (Count I(a)) and his legal mail violations claim (Count I(b)). (ECF No. 314 at 12.) In their Motion, Defendants primarily argue that the Court should dismiss the Doe Defendants because Entsminger never revised his second amended complaint ("SAC") to identify them, as ordered by the Court, and discovery has ended. (ECF No. 278 at 23-24.) In the R&R, Judge Cobb agreed with Defendants, finding that Entsminger never identified the Doe Defendants.[3] (ECF No.

---

[2]Entsminger raised his Rule 56(d) argument in his response to Defendants' Motion. (ECF No. 307 at 10.)

[3]Because Judge Cobb found that the Doe Defendants should be dismissed due to Entsminger's failure to identify them, he did not address the merits of the claims or Defendants' corresponding statute of limitations arguments. The Court takes the same

311 at 10, 13.) In his Objection, Entsminger counters that he diligently tried to obtain the Doe Defendants' names, but there were delays by Defendants and they provided him documents with the wrong year. (ECF No. 314 at 12.)

Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). The Court previously allowed Entsminger's denial of access to the courts and legal mail violations claims to proceed against the Doe Defendants, on the condition that Entsminger amend his SAC when their true identities came to light during discovery. (ECF No. 21 at 8, 20.) Entsminger has filed multiple motions for extension of discovery time and the Court has granted two of his three requests.[4] (ECF Nos. 40, 82, 84, 101, 102, 119, 161.) Despite the Court delaying the discovery deadline by almost a year and ultimately finding there was no other need to further extend the deadline, Entsminger still has not identified the Doe Defendants. (ECF Nos. 84, 102, 161.) Because discovery has now closed and Entsminger cannot provide the Doe Defendants' names, the Court finds that they should be dismissed without prejudice. Thus, the Court adopts Judge Cobb's recommendation to dismiss without prejudice the Count I Doe Defendants.

**D.    Legal Mail Violations Claim Against Defendant Hollman**

Ensminger objects to Judge Cobb's recommendation to grant Defendants' Motion as to his legal mail violations claim against Hollman (Count I(b)). (ECF Nos. 311 at 10-11, 30, 314 at 11.) Entsminger alleges that on September 18, 2015, Hollman opened his confidential legal mail from the ACLU without permission and then taped the opening shut to conceal his actions. (ECF Nos. 18 at 20-24, 21 at 8.) In their Motion, Defendants

---

approach and declines to address Defendants' qualified immunity, statute of limitations, and exhaustion arguments as to the Doe Defendants.

[4]The original discovery deadline was April 15, 2019. (ECF No. 40.) Entsminger has filed multiple motions for extension of the discovery deadline. (ECF Nos. 82, 101, 119.) The Court granted his requests to extend the discovery deadline to October 18, 2019 (ECF No. 84) and then to January 16, 2020 (ECF No. 102).

1   primarily argue[5] that Entsminger has not exhausted his administrative remedies before

2   filing his complaint as to this claim; Entsminger's only grievance about legal mail violations

3   (Grievance #20063082274) was from 2019, four years after the 2015 incident, and he did

4   not pursue it beyond the first level. (ECF No. 278 at 16.) In the R&R, Judge Cobb agreed

5   with Defendants, finding that none of Entsminger's grievances for legal mail violations

6   addressed the September 2015 incident, and he has not shown that administrative

7   remedies were unavailable to him. (ECF No. 311 at 11.) Entsminger argues in his

8   Objection that he submitted a written kite after the 2015 incident, he did not file a

9   grievance because he feared retaliation, and he attempted to exhaust but the prison made

10  it "impossible." (ECF No. 314 at 11.) But the Court agrees with Judge Cobb that

11  Entsminger failed to exhaust his claim.

12       The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

13  brought with respect to prison conditions under section 1983 ... or any other Federal law,

14  by a prisoner confined in any jail, prison, or other correctional facility until such

15  administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The

16  Supreme Court has interpreted § 1997e(a) as "requir[ing] proper exhaustion," *Woodford*

17  *v. Ngo*, 548 U.S. 81, 93 (2006), which "demands compliance with an agency's deadlines

18  and other critical procedural rules." *Id*. at 90. Proper exhaustion requires "a grievant [to]

19  use all steps the prison holds out, enabling the prison to reach the merits of the issue."

20  *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

21       Entsminger has failed to exhaust his administrative remedies for his legal mail

22  violations claim against Hollman, as required by the PLRA. The Nevada Department of

23  Corrections ("NDOC") Inmate Grievance Procedure explicitly requires inmates to submit

24  an informal grievance within 10 days for mail-related complaints. (ECF No. 307-10 at 43.)

25  None of Entsminger's legal mail grievances in the record pertain to the September 18,

26

27       [5]In their Motion, Defendants also argued they should be granted summary
    judgment because Hollman is entitled to qualified immunity and because Entsminger

28  failed to allege that Hollman personally participated in the act or that he suffered harm.
    (ECF No. 278 at 19, 24-25.) The Court need not and does not reach these arguments
    since the Court finds that Entsminger has not exhausted his claim.

2015, incident or were filed by the applicable NDOC deadline. (ECF Nos. 307-2 at 30, 307-3 at 2-4, 53.) In Grievance #20063048263, signed March 7, 2017, Entsminger alleged that his legal mail was opened without his consent and that he has kited the mailroom about this issue and was told it was done in error. (ECF No. 307-2 at 30, 37-38.) In Grievance #20063082274, Entsminger alleged that on April 12, 2019, he received legal mail from the US DOJ that was already opened and then stapled shut. (ECF No. 307-3 at 2.) He claimed that he had issues with mail being opened before and complained about it in Grievance #20063048263 (2017). (*Id*. at 3-4.)

Finally, in Grievance #20063113976, signed by Entsminger on January 17, 2021, he claimed that his legal mail from the US DOJ and US Marshals for this court case was opened and that he raised this issue before in Grievance #20063048263 (2017) and #20063082274 (2019). (*Id*. at 53.) None of these three grievances addressed the September 18, 2015, incident, implicate Hollman, or were filed within the 10-day NDOC deadline. Entsminger contends that on September 22, 2015, he submitted a written kite to the law library supervisor about the 2015 incident and received an unsigned, unidentified response "admitting to the opening" of the mail. (ECF Nos. 18 at 21, 314 at 11.) However, Entsminger has failed to provide the Court with this 2015 kite and response and has not identified these documents in the record. Therefore, he has failed to comply with NDOC procedure and has not exhausted his administrative remedies for the legal mail violations claim against Hollman. *See Woodford*, 548 U.S. at 90; *Griffin*, 557 F.3d at 1119.

Entsminger contends that the available administrative remedies were effectively unavailable to him and that an exception to exhaustion applies. The Supreme Court has recognized three instances where an administrative remedy is unavailable. First, the remedy is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 136 S. Ct. 1850, 1853 (2016). Second, when the procedure is "so opaque that it becomes, practically speaking, incapable of use," where "no ordinary prisoner can navigate it." *Id*.

at 1853-54. Finally, "when prison administrators thwart inmates from taking advantage of [the process] through machination, misrepresentation, or intimidation." *Id.* at 1854.

Entsminger admits that he failed to file a grievance for the 2015 incident, but claims it was because he feared retaliation. (ECF No. 314 at 11.) He also broadly alleges that the prison would not let him exhaust the issue "no matter what [he] tried" and he "was met with dead ends" that were "done intentionally to prevent access to the courts." (ECF Nos. 307 at 13, 314 at 11.) He does not elaborate on exactly what prison officials did to prevent him from exhausting, other than deny his 2017 grievance (Grievance #20063048263). (ECF No. 314 at 11.) Entsminger also does not specify how the NDOC procedure operated as a "dead end," as required by *Ross*. *See* 136 S. Ct. at 1853. Further, Entsminger filed three separate grievances after the 2015 incident in 2017, 2019, and 2021, explaining in detail the later legal mail violations he encountered at the prison. (ECF Nos. 307-2 at 30, 307-3 at 2-4, 53.) These subsequent grievances contradict his argument that he feared retaliation and undermines his suggestion that prison officials thwarted him from taking advantage of the grievance process "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1854. Hence, Entsminger failed to demonstrate that an administrative remedy was unavailable or that his circumstances fall under an exhaustion exception. *See id.* at 1853-54.

In sum, the Court adopts the R&R as to Entsminger's legal mail violations claim against Hollman[6] and overrules his Objection.

**E.     Eighth Amendment Deliberate Indifference Claim for Fractured Wrists**

Entsminger objects to Judge Cobb's recommendation that the Court grant Defendants' Motion as to his Eighth Amendment deliberate indifference claim against Defendants (Count III).[7] (ECF Nos. 311 at 31, 314 at 4.) Entsminger alleges that on May

---

[6]Because amendment would be futile, Defendant Hollman is dismissed with prejudice.

[7]Entsminger asserted an Eighth Amendment claim regarding his broken wrists against Defendants Johns, Mitchell, Keast, Baca, and Aranas. (ECF Nos. 311 at 31.)

1    26, 2014, he fractured his wrists due to the prison's ongoing denial of dental care, which

2    led to vertigo and caused him to fall. (ECF No. 18 at 29.) He claims that after his injury,

3    prison officials delayed scheduling necessary appointments to fix his wrists, delayed

4    scheduling appointments for his ear infection, and intentionally failed to respond to his

5    pain needs after wrist/hip surgery. (ECF Nos. 18 at 29-33, 21 at 10-14.) In their Motion,

6    Defendants argue that Entsminger did not exhaust his administrative remedies[8] because

7    Grievance #20063058172, which most closely correlates with the wrist injury, was

8    initiated in December of 2017, after Entsminger filed the SAC. (ECF No. 278 at 7, 17.) In

9    the R&R, Judge Cobb agreed with Defendants, finding that Grievance #20063058172

10   was not initiated until 2017 and the grievance did not address the 2014 wrist fracture.

11   (ECF No. 311 at 16-17.) Judge Cobb also found that the other grievances submitted by

12   Entsminger did not raise the 2014 wrist fracture either. (*Id*.) In his Objection, Entsminger

13   counters that the R&R and Motion both referenced the wrong grievance, and that he

14   exhausted his administrative remedies in Grievance #20062968987. (ECF No. 314 at 6.)

15          Entsminger correctly notes that the R&R and Motion addressed the wrong

16   grievance (Grievance #20063058172), but this error does not change the Court's ultimate

17   conclusion.[9] Grievance 20063058172 does indeed pertain to a broken *hand* injury that

18   Entsminger sustained in 2017, which was a separate incident from his fractured *wrist*

19   injury in 2014, at issue in this Eighth Amendment claim. (ECF Nos. 278-4 at 3, 307-2 at

20   21-22, 314 at 6.) In his Objection, Entsminger properly cited to Grievance #20062968987,

21   initiated on October 21, 2013, where he mentioned his 2014 wrist injury. (ECF Nos. 307-

22   2 at 2, 314 at 6.) However, Entsminger's Informal Grievance, which must be filed before

23   he can appeal the matter to the first and second grievance levels, only addressed the

24   denial of dental care in retaliation for his previous grievance. (ECF Nos. 278-13 at 10-15,

25   _____

26          [8]Defendants also argue in their Motion that they are entitled to qualified immunity
     and were not deliberately indifferent. (ECF No. 278 at 19-21, 25-28.) However, the Court
27   need not reach these arguments since it finds that Entsminger did not exhaust his
     administrative remedies as to Count III.

28          [9]The Court incorporates by reference the exhaustion legal standard described
     above in Section IV.D.

307-2 at 2.) Entsminger specifically objected to the prison's alleged policy of withholding dental care as retaliation for speaking out. (ECF No. 307-2 at 5.) He only mentioned his 2014 wrist injury in his second-level grievance, where he reported that he lost his balance and fell, breaking both of his wrists, due to an abscessed tooth and frequent tooth infections. (*Id*. at 21-22.) Entsminger also complained about the delay of emergency treatment and surgery for his injured wrists. (*Id*. at 22-23.) Notably, he never mentioned his 2014 wrist injury and subsequent treatment delays in his lower-level grievance forms and responses for Grievance #20062968987. (*Id*. at 2-17.)

Entsminger's actions violated NDOC grievance procedure, which explicitly prohibits inmates from including "more than one grievance issue, per form." (ECF No. 278-13 at 5.) NDOC considers it an "abuse of the inmate grievance procedure when an inmate files a grievance that contains…more than one (1) appropriate issue, per grievance." (*Id*. at 7.) Grievance #20062968987 from October 21, 2013 was about the denial of dental care due to retaliation, it was not about his 2014 wrist injury; he did not mention this 2014 injury until his second-level grievance form in July 2014. (ECF No. 307-2 at 2-23.) In fact, Entsminger himself stated that he planned to initiate a new, separate grievance for the 2014 wrist injury, but the record suggests that he did not ultimately do this. (*Id*. at 22-23.) None of the other grievances Entsminger provided as support for his exhaustion argument pertained to the 2014 wrist fracture. (ECF Nos. 307-1 at 2-11, 72-75, 307-2 at 26-43, 62-63, 84-96, 307-3 at 2-4, 19-21, 53-55.) Hence, Entsminger has not exhausted his administrative remedies because he failed to follow NDOC procedure and properly grieve his 2014 wrist injury, as required by *Woodford*. *See* 548 U.S. at 93. Further, Entsminger's conclusory statements about the overly complicated nature of the NDOC grievance process do not suffice to show that administrative remedies were unavailable to him or that an exhaustion exception applies. (ECF No. 307 at 13.) *See also Albino*, 747 F.3d at 1172.

In sum, Entsminger's Objection to the Eighth Amendment deliberate indifference claim is overruled because he failed to exhaust his administrative remedies or show that

1    such remedies were unavailable to him. The Court therefore adopts the R&R as to this

2    claim.

3        **F.    Conspiracy Claim**

4        Next, Entsminger objects to Judge Cobb's recommendation that the Court dismiss

5    with prejudice his conspiracy claims (Count V) against Defendants[10] because he failed to

6    state a claim upon which relief may be granted. (ECF Nos. 311 at 24-25, 314 at 14.) In

7    their Motion, Defendants argue[11] that Entsminger's allegations are too vague, and he

8    failed to show how each Defendant personally participated in the alleged denial of dental

9    care or link them to the harm suffered. (ECF No. 278 at 29-30.) In the R&R, Judge Cobb

10   agreed with Defendants, finding that Entsminger did not "allege any facts demonstrating

11   an agreement or meeting of the minds" for conspiracy and did not "describe what each of

12   these Defendants did personally to violate his rights." (ECF No. 311 at 24-25.) In his

13   Objection, Entsminger contends that he cannot prove his conspiracy claim until he

14   deposes or cross-examines Defendants at trial. (ECF No. 314 at 14.) He also argues that

15   his ability to obtain evidence for his claim was hindered by the AG Office's discovery

16   failures, this Court's refusal to grant him discovery motions and sanctions, and his lack of

17   counsel. (*Id*.) The Court agrees with Judge Cobb's recommendation.

18       "To state a claim for a conspiracy to violate one's constitutional rights under section

19   1983, the plaintiff must state specific facts to support the existence of the claimed

20   conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must

21   show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be

22   liable, each participant in the conspiracy need not know the exact details of the plan, but

23   each participant must at least share the common objective of the conspiracy." *Crowe v.*

24   _____

25       [10]Entsminger asserted a conspiracy claim against Defendants Sandoval, Miller,
     Cortez-Masto, Laxalt, Cegavske, Clinger, Aranas, Bannister, Jacobs, Keast, Sunshine
26   Flores, Reynolds, Haycock, Cox, and Dzurenda. (ECF No. 311 at 3-4.)

27       [11]Defendants also argue in their Motion that the Court should grant summary
     judgment because they are entitled to qualified immunity. (ECF No. 278 at 21-22.)
28   However, the Court need not and did not reach this argument since it finds that
     Entsminger failed to show a genuine issue for trial that Defendants conspired to violate
     his constitutional rights.

1   *Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). Furthermore, the plaintiff must show

2   an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592

3   (9th Cir. 2010). Also, "allegations of conspiracy must be supported by material facts, not

4   merely conclusory statements." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126

5   (9th Cir. 1989) (first citing *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980)), then citing

6   *Lockary v. Kayfetz*, 587 F. Supp. 631 (N.D. Cal. 1984)).

7        To start, Defendants have satisfied their burden of showing that there are no

8   genuine issues of material fact. *See Zoslaw*, 693 F.2d 870. They have demonstrated that

9   Entsminger failed to specifically allege how Defendants, in their roles as former Governor,

10  Secretary of State, Attorney General, Chief of Staff, and NDOC official, collectively agreed

11  or personally participated to deprive him of his constitutional right to dental care. (ECF

12  No. 278 at 29.) Entsminger, on the other hand, has failed to show that there is a genuine

13  issue for trial. In the SAC, he broadly alleges that Defendants have conspired to create

14  "systemic deficiencies within the NDOC" to deprive prisoners of dental and medical care.

15  (ECF No. 18 at 44-45.) He partially blames the inadequate care on lack of financial

16  resources, overcapacity of the prison population, and poor staff to patient ratio, while also

17  mentioning an ACLU report and prior prisoner settlements. (*Id*.) Entsminger argues that

18  the Board of State Prison Commissioners clearly has a "common plan" because they work

19  with NDOC prison officials and policy makers. (ECF No. 307 at 3, 15.) He puts forth

20  conclusory statements of conspiracy without support or specific facts as to how these

21  Defendants have agreed to deprive him of dental care or had a meeting of the minds to

22  violate his constitutional rights. *See Woodrum*, 866 F.2d at 1126; *Crowe*, 608 F.3d at 440.

23  In opposing summary judgment, Entsminger has not shown that Defendants, in their

24  diverse roles as government or NDOC officials, all shared a common objective to deprive

25  him of dental care. *See Crowe*, 608 F.3d at 440.

26       In sum, Entsminger's Objection to the conspiracy claim is overruled because he

27  failed to demonstrate a genuine issue of material fact for trial. The Court therefore adopts

28  the R&R and grants Defendants' Motion as to this claim.

**G.    Eighth Amendment Deliberate Indifference Claim Against VanHorn**

**1. Statute of Limitations and Continuing Violations Doctrine**

In their Motion, Defendants[12] argue that Entsminger's Eighth Amendment deliberate indifference to serious dental needs claim against VanHorn (Count IV) is barred by the statute of limitations because he filed his complaint more than two years after the second level (final) response in each of his grievances (Grievance #20062968987, #20062955272 and #20062899392). (ECF No. 278 at 11-12.) Judge Cobb agreed with Defendants, finding that the pre-2013 claims against VanHorn are barred by the two-year statute of limitations.[13] (ECF No. 311 at 23.) Entsminger objected to the recommendation, contending that the "pre-2013 torts of Dr. VanHorn are part of a continuing harm," stemming from a December 2012 visit with him. (ECF No. 314 at 17.) The Court disagrees with Judge Cobb that Entsminger's claims against VanHorn are barred by the statute of limitations.

The statute of limitations under section 1983 begins to run when the cause of action accrues, i.e., "when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998)). Further, "[w]hen not inconsistent with federal law," the Court will "apply the law of the forum state regarding tolling." *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (internal citations omitted). The statute of limitations in a prisoner litigation case is generally tolled from the date the inmate first files the grievance to the date that the final

---

[12]Entsminger asserted an Eighth Amendment deliberate indifference to serious dental needs claim against Defendants Remsen, Keast, Elliot, VanHorn, Gleason, Peery, Grachowski, Aranas, Jacobs, Yup (through his estate), Peterson, Link, Hanson-Jacobsen, Swope, Snider, and Bannister, but only objected to Judge Cobb's recommendation as to VanHorn. (ECF Nos. 311 at 3, 314 at 14-16.)

[13]Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore section 1983 actions, is two years. *See* NRS § 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

1    response to that grievance is issued. *See Wisenbaker v. Farwell*, 341 F. Supp. 2d 1160,

2    1165 (D. Nev. 2004) (citing *State of Nev. v. Shively*, 871 P.2d 355, 356-57 (Nev. 1994)).

3          The continuing violations doctrine applies to § 1983 actions, including claims of

4    deliberate indifference, and allows a plaintiff to seek relief for events outside of the

5    limitations period. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). The doctrine

6    holds that where a violation is ongoing in nature, the statute of limitations does not begin

7    to run until the wrongful conduct ends. *See Flowers v. Carville*, 310 F.3d 1118 1126 (9th

8    Cir. 2002). There are two ways in which a plaintiff may establish a continuing violation.

9    First, the plaintiff may highlight "a series of related acts, one or more of which falls within

10   the limitations period," and second, the plaintiff may demonstrate "the maintenance of a

11   discriminatory system both before and during [the limitations] period." *Bird v. Dep't of

12   Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (internal citations omitted).[14] Although

13   the Ninth Circuit has not adopted the continuing violations doctrine for § 1983 Eighth

14   Amendment medical care claims, the court has not foreclosed the possibility and has

15   acknowledged that "other circuits and many district courts in our circuit have" adopted the

16   doctrine to such claims. *See Deetz v. Ryan*, 830 Fed. App'x. 986, 987 (9th Cir. 2020). In

17   fact, the Ninth Circuit has even indicated its willingness to apply the doctrine in this context

18   in a recent case. *See Chestra*, 747 F. App'x at 627. However, "[the continuing violations]

19   doctrine does not apply when a single discriminatory act outside the statute of limitations

20   period merely has harsher effects at a later date." *Reese v. Clark Cty. Det. Ctr.*, Case No.

21   2:15-cv-01633-GMN-VCF, 2018 WL 4494088, at *5 (D. Nev. Sept. 18, 2018) (citing *Knox*,

22   260 F.3d at 1013).

23

24

25          [14]In *Bird*, the Ninth Circuit found that "[e]xcept for a limited exception for hostile

26   work environment claims . . . the serial acts branch is virtually non-existent." 935 F.3d at
     748 (internal citations omitted). As for the systematic branch, the court has "consistently

27   refused to apply [this branch] to rescue individualized claims that are otherwise time-
     barred" but has "left room" for its application to class-wide pattern-or-practice claims. *Id*.

28   However, *Bird* specifically addressed a § 1983 complaint for a due process violation, not
     an Eighth Amendment deliberate indifference violation. *See id*. at 734.

1    Defendants' Motion highlights three grievances filed by Entsminger that correlate

2    with his claims of inadequate dental care, Grievance # 20062968987, #20062955272,

3    and #20062899392. (ECF No. 278 at 11-12.) First, Grievance #200628999392, which

4    was filed in 2010, does not involve VanHorn and seems to pertain to Dr. Renson instead.

5    (ECF No. 278-8 at 2-11.) Entsminger's specific allegations against VanHorn were raised

6    in Grievance #20062968987 and #20062955272. Entsminger filed his complaint with this

7    Court on September 23, 2016. (ECF No. 1-1.) Grievance #20062955272 was initiated by

8    Entsminger on January 4, 2013, and the final second-level grievance response was

9    signed on September 11, 2013, which exceeds the two-year statute of limitations. (ECF

10   Nos. 278-5 at 2, 278-7 at 2.) Grievance #20062968987 was initiated by Entsminger on

11   October 21, 2013, and the final second-level grievance response was signed on

12   September 25, 2014, which falls within the two-year statute of limitations. (ECF Nos. 307-

13   2 at 3, 278-2 at 10.)

14   However, because the Court finds the continuing violations doctrine applies here,

15   it will consider the allegations in Grievance #20062955272, which originally fell outside

16   the statute of limitations. In Grievance #20062955272, Entsminger alleged that during a

17   December 5, 2012, emergency visit with Dr. VanHorn, he needed an immediate root canal

18   for an abscessed tooth (Tooth #28). (EF Nos. 18 at 36, 278-5 at 3.) VanHorn allegedly

19   told him that he was the perfect candidate for a root canal, but he could not perform the

20   procedure because this was not permitted by the NDOC. (*Id*.) VanHorn instead offered to

21   extract the tooth. (*Id*.) At the same visit, Entsminger had another tooth (Tooth #2) that

22   was abscessed, bleeding, painful, and had purportedly been x-rayed five times over the

23   past three years. (ECF No. 278-5 at 3-4.) VanHorn allegedly told Entsminger that he did

24   not have time to repair Tooth #2 either because he had too many patients and had injured

25   his shoulder, and for Entsminger to pack toothpaste into his gums instead. (ECF Nos.

26   278-5 at 3-4, 278-6 at 7.) Grievance #20062968987 pertains to a subsequent February

27   7, 2013, visit with VanHorn. (ECF No. 307-2 at 2-3.) Entsminger alleges that VanHorn

28   came up with a possible solution for Tooth #28 using fluoride filling but refused to provide

16

1   dental care until Entsminger dropped his previous January 2013 grievance (Grievance

2   #20062955272). (ECF Nos. 278-6 at 21, 307-2 at 2-3.) In the second-level grievance,

3   filed July 21, 2014, Entsminger claims that his abscessed Tooth #28 still had not been

4   treated and was causing him vertigo and dizziness, which led to a fall that broke his wrists

5   in May 2014. (ECF No. 307-2 at 20.)

6          The two grievances clearly pertain to a series of related acts by VanHorn, who,

7   according to Entsminger, repeatedly denied proper dental treatment to him for abscessed

8   Tooth #28. (ECF Nos. 278-5 at 3, 307-2 at 2-3.) The later denial of dental care by VanHorn

9   on February 7, 2013 (addressed in Grievance #20062968987) was allegedly linked to

10  retaliation for Entsminger's filing of the first grievance (Grievance #20062955272).

11  Specifically, VanHorn's alleged refusal to treat Tooth #28 on the February 7, 2013, visit

12  was because Entsminger filed a grievance for VanHorn's failure to treat Tooth #28 on

13  December 5, 2012. (ECF Nos. 18 at 36, 278-5 at 3, 278-6 at 21, 307-2 at 2-3.) The two

14  grievances address one continuing violation or harm where Entsminger alleged that he

15  was consistently and continuously denied adequate dental care for Tooth #28. (*Id*.) These

16  closely related events are not discrete acts, but rather showcases a series of behavior

17  where VanHorn allegedly failed to repair Tooth #28, which needed an immediate root

18  canal and was likely infected. *See Reese*, 2018 WL 4494088, at *5. Because Grievance

19  #20062968987 falls within the two-year statute of limitations and the continuing harm

20  doctrine applies to Grievance #20062955272, the Court will consider both grievances in

21  its analysis.

22         Thus, the Court disagrees with Judge Cobb's recommendation that Entsminger's

23  claims against VanHorn are barred by the statute of limitations and will instead sustain

24  his Objection as to this issue.

25                    **2. Deliberate Indifference Analysis**

26         Alternatively, Defendants argue that VanHorn was not deliberately indifferent to

27  Entsminger's dental needs because he "received medical and dental treatment regularly

28  and on many, many occasions," there is no evidence that the treatment delay led to further

1   injury, and the circumstances surrounding his dental care amounted to a difference of

2   opinion. (ECF No. 278 at 27-28.) In the R&R, Judge Cobb agreed with Defendants, finding

3   that the post-2013 allegations against VanHorn[15] should be dismissed with prejudice

4   because he offered Entsminger adequate treatment for his tooth. (ECF No. 311 at 19.)

5   Entsminger objected to the recommendation, arguing that VanHorn deliberately denied

6   him dental care due to a prior grievance he filed, even though VanHorn knew treatment

7   was medically necessary. (ECF No. 314 at 15-16.) The Court will sustain Entsminger's

8   Objection as to this issue.

9       "To establish an Eighth Amendment violation, a plaintiff must satisfy both an

10  objective standard—that the deprivation was serious enough to constitute cruel and

11  unusual punishment—and a subjective standard—deliberate indifference." *Snow v.*

12  *McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). Defendants offer a mere conclusory

13  statement that "there are no facts that Plaintiff suffered from an untreated 'serious medical

14  need'" without any further support or elaboration. (ECF No. 278 at 28.) Defendants have

15  failed to show that there is no genuine issue of material fact as to whether Entsminger

16  had "a serious medical need" because he alleges in his verified complaint that the "failure

17  to treat [his] condition could result in further significant injury or the unnecessary and

18  wanton infliction of pain." (ECF No. 18 at 36-37.) *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

19  Cir. 2006) (internal quotations omitted). Therefore, the Court finds that Defendants have

20  failed to meet their burden as to the objective prong.

21      Defendants have also failed to show that there are no genuine issues of material

22  fact as to whether VanHorn was deliberately indifferent under the subjective prong. *See*

23  *Zoslaw*, 693 F.2d at 883. First, Defendants argue that there is "massive evidence" that

24  Entsminger received dental treatment regularly and often but only cited to Entsminger's

25  complaint without further elaboration. (ECF No. 278 at 27.) Just because Entsminger

26

27      [15]The Court notes an error in the R&R. There does not seem to be any post-2013
    allegations against VanHorn since he left the prison by November of 2013. (ECF No. 278-

28  2 at 33.) The record shows that Entsminger met with VanHorn on February 7, 2013, not
    February 7, 2014, as alleged in the SAC. (ECF Nos. 278-1 at 2, 18 at 37.) Entsminger
    confirmed that this was a typo. (ECF No. 314 at 15.)

1    visited the dentist often does not mean he received *adequate* or *acceptable* care for his

2    urgent dental needs. In fact, during the two times he saw Dr. VanHorn for abscessed

3    Tooth #28, the record suggests that VanHorn did not properly treat or repair the tooth, but

4    instead gave Entsminger some antibiotics. (ECF No. 278-5 at 6.) VanHorn allegedly never

5    pulled the tooth and according to Entsminger's grievance report in July 2014, he had not

6    received additional care for abscessed Tooth #28 since December 2012, when he first

7    saw VanHorn. (ECF No. 307-2 at 20.)

8         Next, Defendants offer merely a conclusory statement that the treatment delay of

9    Entsminger's teeth did not lead to further injury. (ECF No. 278 at 27-28.) When a prisoner

10   alleges that delay of medical treatment evinces deliberate indifference, the prisoner must

11   show that the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*,

12   766 F.2d 404, 407 (9th Cir. 1985). However, there is still a genuine issue of material fact

13   as to whether the delay caused further harm. Entsminger alleges that the years-long

14   denial of treatment for Tooth #28 led to "dental pain, infections, difficulty swallowing food,

15   headaches, fevers, dizziness, vertigo, sinus pressure, equilibrium problems, emotional

16   stress and financial losses." (ECF No. 307-2 at 21.)  He also claims that the denial of care

17   caused him to fall and break his wrists on May 26, 2014. (*Id*. at 21-22.) The wrist injury

18   seems to be corroborated by Entsminger's medical and NDOC records. (ECF No. 307-9

19   at 58, 77-79.) A rational trier of fact could reasonably find it possible that long-term pain

20   and discomfort stemming from an untreated abscessed tooth may lead to more significant

21   ramifications and subsequent physical injuries.

22        Finally, Defendants argue that Entsminger's SAC shows the treatment delay was

23   a mere difference of medical opinion and not enough for deliberate indifference—but did

24   not further elaborate or present the Court with specific examples. (ECF No. 278 at 28.)

25   "A difference of opinion between a prisoner-patient and prison medical authorities

26   regarding treatment" is insufficient for deliberate indifference. *Franklin v. State of Or.,*

27   *State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citations omitted).

28   Instead, the plaintiff must show that the treatment course "was medically unacceptable

1   under the circumstances" and chosen "in conscious disregard of an excessive risk to

2   plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (internal

3   citations omitted).

4          The Court is unconvinced by Defendants' argument that the circumstances

5   amounted to a difference of medical opinion. The record indicates that the condition of

6   Tooth #28 was serious enough for VanHorn to offer to extract it during their initial visit in

7   December 2012. (ECF Nos. 18 at 36, 278-5 at 6.) Entsminger wanted a root canal

8   instead—which VanHorn said he was a perfect candidate for. (*Id*.) However, this does not

9   explain why VanHorn allegedly failed to treat abscessed Tooth #28 on the second visit in

10  February 2013, two months later, and why, according to Entsminger, he still had not

11  received treatment for the tooth several years after his 2012 visit with VanHorn. (ECF

12  Nos. 278-6 at 21, 307-2 at 2-3, 20.) Thus, a rational trier of fact could reasonably find that

13  VanHorn had the requisite knowledge and actually drew the inference of substantial harm

14  but chose a treatment course that was "medically unacceptable under the circumstances"

15  and "in conscious disregard of an excessive risk to [Entsminger's] health." *See Peralta v.*

16  *Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (internal citations omitted); *Toguchi*, 391 F.3d

17  at 1058.

18         In sum, the Court finds that there is still a genuine dispute of material fact as to

19  whether VanHorn was deliberately indifferent and denies Defendants' Motion as to this

20  issue.

21                        **3. Qualified Immunity**

22         Finally, Defendants argue that VanHorn is entitled to qualified immunity[16] since

23  Entsminger did not allege that VanHorn acted with plain incompetence or knowingly

24  violated his rights. (ECF No. 278 at 20-21.) They contend that Entsminger's allegations

25

26         [16]Because Judge Cobb found that Entsminger's pre-2013 allegations against
    VanHorn were barred by the statute of limitations and his post-2013 allegations should
27  be dismissed since Entsminger failed to state a claim upon which relief may be granted,
    Judge Cobb did not address Defendants' qualified immunity argument. (ECF No. 311 at
28  31.) Entsminger also did not address the qualified immunity issue in his Objection. (ECF
    No. 314 at 14-17.)

1   "demonstrate, at most, that he and his practitioners differed in opinion as to the treatment

2   [Entsminger] should receive." (*Id*. at 20.) The Court disagrees.

3        The doctrine of qualified immunity "balances two important interests—the need to

4   hold public officials accountable when they exercise power irresponsibly and the need to

5   shield officials from harassment, distraction, and liability when they perform their duties

6   reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In deciding whether a

7   government official is entitled to qualified immunity, the Court asks "(1) whether the

8   official's conduct violated a constitutional right; and (2) whether that right was 'clearly

9   established' at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir.

10  2019) (citing *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc)).

11  However, the Court has discretion "in deciding which of the two prongs of the qualified

12  immunity analysis should be addressed first in light of the circumstances in the particular

13  case at hand." *Pearson*, 555 U.S. at 236.

14       The Court will exercise its discretion and address whether VanHorn's conduct

15  violated a constitutional right first. *See id*. As stated above, there is still a genuine dispute

16  of material fact as to whether VanHorn was deliberately indifferent to Entsminger's dental

17  needs under the Eight Amendment. Therefore, it is uncertain at this point whether

18  VanHorn violated a constitutional right, so he is not entitled to qualified immunity at this

19  time.

20  **V.   CONCLUSION**

21       The Court notes that the parties made several arguments and cited to several

22  cases not discussed above. The Court has reviewed these arguments and cases and

23  determines that they do not warrant discussion as they do not affect the outcome of the

24  issues before the Court.

25       It is therefore ordered that Entsminger's Objection (ECF No. 314) to the Report

26  and Recommendation of U.S. Magistrate Judge William G. Cobb is overruled in part, and

27  sustained in part, as explained herein. The Report and Recommendation of United States

28  Magistrate Judge William G. Cobb (ECF No. 311) is similarly accepted in part and rejected

in part as also described herein.

It is further ordered that Entsminger's request to defer ruling on Defendants' motion for summary judgment under Rule 56(d) is denied.

It is further ordered that Defendant Juliette Roberson will remain dismissed. The Clerk of Court is directed to immediately terminate her from this action.

It is further ordered that Defendants' motion for summary judgment (ECF No. 278) is granted in part and denied in part as further explained both herein and below. The Motion is granted as to the following claims:

1. Count I(a), alleging an access to courts claim against John/Jane Doe Defendants. It is further ordered that the John/Jane Doe Defendants are dismissed without prejudice.

2. Count I(b), alleging a First Amendment legal mail violations claim against Defendants Hollman and John/Jane Doe. It is further ordered that Defendants John/Jane Doe are dismissed without prejudice and Defendant Hollman is dismissed with prejudice.

3. Count III, alleging an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Johns, Mitchell, Keast, Baca, and Aranas.

4. Count IV, alleging an Eighth Amendment deliberate indifference to serious dental needs claim against Defendants Remsen, Snider, Peery, Keast, Bannister, Swope, Gleason, Grachowski, Elliot, Peterson, Link, and Hanson-Jacobsen. It is further ordered that Defendants Peterson, Link, and Hanson-Jacobsen are dismissed with prejudice as to this claim.

5. Count V, alleging a conspiracy claim against Defendants Sandoval, Miller, Cortez-Masto, Laxalt, Cegavske, Clinger, Aranas, Bannister, Jacobs, Keast, Flores, Reynolds, Haycock, Cox, and Dzurenda. It is further ordered that Defendants Sandoval, Miller, Cortez-Masto, Laxalt, Cegavske, Clinger, Aranas, Bannister, Jacobs, Keast, Flores, Reynolds, Haycock, Cox, and

1         Dzurenda are dismissed with prejudice as to this claim.

2     6. Count VII(a), alleging a due process claim of an authorized intentional

3        deprivation of property against Defendants Remsen, Keast, Aranas, Yup

4        (through his estate), and Cox. It is further ordered that Defendant Yup (through

5        his estate) is dismissed with prejudice as to this claim.

6     7. Count VII(b), alleging a due process claim against Defendants Gleason,

7        Everett, Mitchell, Brockway/Rambur, Jacobs, Keast, Flores, Reynolds,

8        Haycock, Cox, and Aranas.

9     Defendants' motion for summary judgment (ECF No. 278) is denied as to the

10  following claims:

11     1. Count II, alleging a retaliation claim against Defendants VanHorn, Keast,

12        Jacobs, Gleason, Yup (through his estate), McBroom, Moyle, Navarro, Walsh,

13        Aranas, and Austin.

14     2. Count IV, alleging an Eighth Amendment deliberate indifference to serious

15        dental needs claim against Defendants VanHorn, Aranas, and Yup (through his

16        estate).

17     3. Count VI, alleging an equal protection claim against Defendants Gleason,

18        Flores, Link, Peery, Keast, Jacobs, Yup (through his estate), and Everett.

19     DATED THIS 24th Day of September 2021.

20

21                                  _____

22                  MIRANDA M. DU
                       CHIEF UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28